### KENNEDY v. HARTRANFT, Collector.

*(Circuit Court, E. D. Pennsylvania. October 18, 1881.)*

1. **TARIFF LAWS—CLASSIFICATION OF ARTICLES—BURDEN OF PROOF.**

   Where a collector classifies an article under a different name from the designation of it on the invoice, the burden is upon the government to show that his classification is proper.

2. **SAME—INTERPRETATION OF WORDS—TRADE TERMS.**

   Where terms employed in the tariff laws have a special restricted meaning, according to the general usage of the trade to which the articles appertain, it is to be presumed that congress used them in such restricted sense; but the fact that they have such restricted meaning must be clearly established, otherwise they are to be interpreted according to their common, popular signification.

3. **SAME—HOOP IRON—ACT OF JUNE 30, 1864.**

   The words "all hoop iron," as used in the act of June 30, 1864, subsequently incorporated in section 2504, Rev. St., includes not only hoop iron in strips of from 30 to 60 feet in length as it comes from the rolls, in which form it is usually bought and sold, but also all lengths of hoop iron not changed by manufacture into a new and distinct article.

4. **SAME—MANUFACTURE OF IRON.**

   If, however, hoop iron has been subjected to such mechanical treatment as to convert it into an article fitted for a special use, without any further mechanical treatment, and unfitted for the general purposes to which hoop iron is adapted, such article is a manufacture of iron, dutiable as such, and not as hoop iron.

5. **SAME—COTTON TIES.**

   The above principles applied to an importation of cotton ties consisting of bands of iron 11 feet long, painted and accompanied by buckles, the bands being put up in bundles of 30, with 30 buckles strung upon one band.

This was an action at law brought by Logan P. Kennedy, a citizen of Kentucky, against John F. Hartranft, collector of customs of the district of Philadelphia, to recover an excess of duty claimed to have been exacted on about 9,000 bundles of cotton ties imported by plaintiff into the port of Philadelphia in August, 1880. The articles imported were bands of iron, each 11 feet long, painted and accompanied by a buckle. They were put up in bundles of 30 bands, with 30 buckles strung on one band. The collector claimed that they were hoop iron, and collected the duty of one and a half cents per pound imposed on that article by section 2504, Rev. St. Plaintiff claimed that they were manufactures of iron, and as such subject only to the duty of 35 per cent. *ad valorem* imposed by the same section on all manufactures of iron not otherwise provided for.

The case was tried October 18, 1881, before *McKennan*, C. J., and *Butler*, D. J. The testimony of plaintiff's witnesses was to the effect that prior to and since the passage of the act of June 30, 1864, (13 St. 202,) on which the portions of section 2504 of the Revised Statutes in controversy were founded, "hoop iron," as it was understood in the trade, meant long strips of iron, from 30 to 60 feet in length, as it came from the rolls, fitted for no special purpose, but suitable to be manufactured and used for a variety of purposes; that a cotton tie consisted of a band of iron 11 feet long, painted to prevent rust, and fitted with a buckle, either riveted to it or detached from it; that whether the buckle was riveted or detached, the tie was ready for immediate use for baling cotton, the band being passed around the bale, the ends bent into loops, and the loops slipped into the buckle, where they were tightened and securely held by the expansion of the bale; that cotton ties were a distinct article of commerce not dealt in by dealers in hoop iron; that their short length and the paint upon them rendered them unfit for the general purposes of hoop iron, and that they could not be used for such purposes without burning off the paint and cutting them to new lengths, at a pecuniary loss.

The testimony of defendant's witnesses was to the effect that the term "hoop iron" had no restricted trade meaning, but prior to and since the act of 1864 it was used in the trade in its general significance, comprehending all kinds and lengths of hoop iron, irrespective of the purpose for which it was intended to be used; that a cotton tie was simply a piece of hoop iron, painted, and in the opinion of the witnesses was not a separate manufacture; that it was made by the manufacturers of hoop iron, who included it under the designation of hoop iron, and considered it as simply one of the various forms in which such iron was furnished; and that after cotton ties had been used to bale cotton they were sold and used for various purposes to which hoop iron was applied, although at a greatly reduced price.

*Frank P. Prichard* and *George Tucker Bispham*, for plaintiff, cited to the court *In re 200 Chests of Tea,* 9 Wheat. 430; *Barlow* v. *U. S.* 7 Pet. 404; *Curtis* v. *Martin,* 3 How. 106; *Lawrence* v. *Allen,* 7 How. 785; *U. S.* v. *Hathaway,* 4 Wall. 404; *U. S.* v. *Quimby,* 4 Wall. 408; *Arthur* v. *Cumming,* 91 U. S. 362; *Arthur* v. *Morrison,* 96 U. S. 108; *Graham* v. *Collector,* U. S. C. C. at New Orleans, July, 1868,

(unreported;) *Ranlett* v. *Collector*, U. S. C. C. at New Orleans, January 26, 1881, (unreported.)

*John K. Valentine*, U. S. Dist. Atty., for defendant, cited *U. S.* v. *Kid*, 4 Cranch, 1; *U. S.* v. *Potts*, 5 Cranch, 286; *U. S.* v. *Sarchet*, Gilpin, 273; *Bruce* v. *Murphy*, 10 Blatchf. 230; *Maillard* v. *Lawrence*, 16 How. 257; *Leng* v. *Murphy*, U. S. C. C. at New York, April 9, 1874, (unreported;) *Ranlett* v. *Collector*, U. S. C. C. at New Orleans, January 26, 1881, (unreported.)

McKENNAN, C. J., (*charging jury.*)   The plaintiff imported into the port of Philadelphia, in several vessels, a considerable quantity of iron, invoiced as cotton ties.   That iron was treated by the collector of the port of Philadelphia, who is the defendant in this case, as hoop iron, was classified as such, and he exacted from the plaintiff the duty which is imposed upon hoop iron.   The plaintiff paid that duty under protest, and took the necessary steps to enable him to bring a suit for the recovery of the excess of duty, if an excess of duty was charged by the collector.   The United States having classified this article differently from the invoice designation of it, and imposed a higher duty upon it than it would otherwise have been subjected to, the burden of proof is upon the United States to satisfy you that there has been a proper classification of this article by the collector, and that the rate of duty imposed by law only was exacted by him.   What, then, is the proper classification of the article in question, so as to ascertain the duty to be imposed by law?   As I have already remarked, it was classified as hoop iron under this clause of the tariff act of the thirtieth of June, 1864: "All band, hoop, and scroll iron from one-half to six inches wide, under one-eighth of an inch in thickness, and not thinner than No. 20 wire gauge, one and one-half cents per pound."

Now, we must, in the first place, determine what is the meaning of the language of that act; and here I may say that the words employed in all laws are to be received in their common, popular signification.   Thus interpreting this act there can be no doubt as to the meaning of these terms, "all hoop iron."   It is not certainly confined to hoop iron of any particular length, but it is to be classified according to its character—whether it is hoop iron or not—irrespective of its length.   It is claimed here, however, that this act has not that comprehensive signification and meaning, but that these words have a special and restricted commercial sense, in which sense it is to be presumed they were used by congress.   Now, it is a rule of construction undoubtedly that, where terms employed in an act of congress

have a special meaning according to the common understanding and usage of the trade to which the article appertains, presumptively congress used the term in such restrictive sense. But you must be satisfied from the evidence in the cause that there was such a general restrictive meaning given to these words in the trade that there could be no doubt that they included only hoop iron or band iron; that not only was this term used generically to describe hoop iron, but that it excluded any other form of hoop iron than such as it is claimed here this term commercially is to be restricted to the description of; that evidence is that the term hoop iron ordinarily is used to describe pieces of hoop iron which are put up in bundles and lengths just as they come out of the rolls, and which contain 56 pounds, and that generically such an article is described as hoop iron in a commercial sense.

But, gentlemen, in order to fix this meaning to such a term, and to change the popular meaning of the term employed in the act of congress, you must be satisfied that such is the restricted sense given to the word by the universal understanding of the trade in which the term is employed; and, besides that, that it is exclusively descriptive of the article to which the witnesses here have said it is generically applied. Now, is there evidence upon which you can come to the conclusion that this word is used in that restrictive sense in this act of congress? As I have already remarked, it must be shown by the evidence beyond doubt that such is the general signification of the term as given to it by the use in the trade. Now, have you such evidence here? If I recollect the testimony aright, there is a very serious difference among the witnesses. Some of them testify that hoop iron—very few of them before 1864—was descriptive of a bundle of iron as I have already described, and others say that it was not. So that, unless you are clearly satisfied from all the evidence that hoop iron had this restricted sense according to commercial usage, the commercial signification of it will not be so fixed as to authorize the presumption that this word was used in any other sense by the act of congress than according to the popular meaning.

But, gentlemen, the act of congress is a little broader than that. It seems clearly to contemplate something more than one kind of hoop iron. If it said hoop iron, and such was the restrictive sense, and such was satisfactorily established before you by the weight of testimony, it might possibly be proper for you to presume that congress used the term in that restrictive sense. But "all hoop iron"

would seem to exclude the inference that even one kind of iron, which is generically described as hoop iron according to the testimony of the witnesses, was not intended to be confined to it. There can be no doubt at all that iron cut into lengths of 12 feet or 15 feet or 20 feet or 11 feet is a species of hoop iron until it is so changed as to transform it into something else than hoop iron. So that I have no doubt that, under a proper construction of this act, the article imported here fell within the designation of the act as hoop iron, and, without anything more, was subject to the duty which was charged upon it by the collector, and I so instruct you that you are to regard this, as far as the commercial description of this article is concerned, as embraced within the terms of the act of 1864.

Now, has it been taken out of this classification and placed in some other? This is the material question. If it was proper to so classify it, then the duty was properly imposed upon it. If it has been changed, and was not hoop iron in the sense in which this term was used by congress, and was placed in some other category, then the duty was illegally exacted, and the plaintiff is entitled to recover.

Now, it is claimed here that it is a manufacture of iron—that is to say, that it is a fabric made out of hoop iron; not that it is not iron by being changed in form, but that it is something which is made out of iron, and therefore is a manufacture of iron.

Now, is this a manufacture of iron? You have had the case before you, and it is important that you should look at it carefully in order to determine the question which I have just stated. It was imported in bundles made of pieces of this length, [exhibiting a strap,] with the ends turned over as these are, or 30 pieces with 30 buckles attached, or I should say 30 buckles attached to one of the pieces, but evidently intended that one buckle should be used for each band. It is, therefore, alleged to be a cotton tie. Now, in order to take it out of the category first referred to, and to place it in the list of manufactures, it is necessary that something should be done to it; that it should have been subjected to such manipulation as would completely fit it for some special purpose, and that would, to that extent, unfit it for the general purposes to which hoop iron is adapted. Now, has it been subjected to such treatment? According to the testimony of all the witnesses, while it is in this form it is a cotton tie. Now, what was necessary, gentlemen? What further mechanical treatment than such as it received was necessary to make this a complete cotton tie? That is a fact for you to determine on the evidence.

According to the testimony, to make a complete cotton tie you take iron, cut it into 11-feet lengths, paint it, and put a fastening or buckle on it. It is then fitted for use, although it may not actually be put around the cotton bale. Still, if it is fitted for such application, and no further mechanical treatment is needed, it is a cotton tie. The application of it to the bale is another thing, and does not at all concern the mechanical treatment or construction. So that it is for you to decide, under the evidence here, and upon the inspection of the article itself, whether or not this was a fabric of iron, and therefore a manufacture under the meaning of the portion of the tariff act to which I have called your attention. If it was, then it was not subject to the duty charged upon it, and the plaintiff would be entitled to recover the excess.

I do not deem it necessary to discuss the evidence in this case. I think the question is a very simple one, and I think it is for you to apply the evidence, and to use your own eyes in coming to a conclusion.

This is the condition in which the article is brought in, [exhibiting tie.] Because the buckle is attached to one piece does not make the slightest difference. The buckles were evidently intended one for each separate piece, and can be so treated.

Now, taking this piece of iron 11 feet long, painted and with a buckle attached to it, does it need any further mechanical treatment to fit it for use as a cotton tie, and to be applied to a cotton bale? If it does not, then it is a manufacture within the meaning of the act, and more than the regular duty authorized by law was exacted. That is the testimony of the witnesses; but, as I say, I do not intend to advert to that any further than simply to indicate what the testimony may be made to include in reference to this matter. But it is not improper to say that, in the judgment of the court, that is the undisputed evidence; that when this tie is taken and the ends bent around and the buckle put on it, it is a complete cotton tie, and may be used for bailing cotton. If it is such, then I say the plaintiff is entitled to recover.

A number of points have been presented here, only two or three of which I propose to notice, because I do not deem any more necessary. *First*, the plaintiff has asked the court to instruct the jury that if they find from the evidence that the articles are prepared for a special use, and that their use is fixed by the preparation which has been completed, so that naturally and economically they can be used for

no other purpose, then they belong to the class of manufactures not otherwise provided for; that is, they are cotton ties. The court so instructs you upon this point.

The defendant has put the converse of that proposition: If the jury find that the hoops and bands of iron are not such a manufacture as to be known and distinguished as a manufacture of iron, they should find for the defendant. You are so instructed.

The eleventh point presented by the defendant is substantially the same thing: To constitute the material in question a manufacture within the meaning of the act of 1864, the jury must find that it is a completed product ready for the use for which it was designed, without any further manipulation or any more work being done upon it, or any change being made upon it to fit it for that use.

That point is answered as follows: To withdraw the article in question from the category of hoop iron, the jury must be satisfied that it has been so manipulated as to change its distinctive character, not as to the material of which it is made, certainly, because in one sense it is hoop iron; but whether it is a thing made out of hoop iron, or hoop iron in its original condition, converted into a completed fabric of iron, and thus prepared and ready for some special use, and so unfitted for economical employment in the ordinary general use to which hoop iron may be applied without further mechanical manipulation, is another question.

Now, gentlemen, I repeat that, in the judgment of the court, the only material inquiry for you here is whether this article has been subjected to such mechanical treatment as to fit it completely for the special use for which it was designed; that is, bailing cotton. It is not necessary that it should be put around a cotton bale and fastened to it to make it complete. If it was completely prepared for that use, so that it could be used by the person who wished to put it around cotton bales, and needed no further mechanical treatment, then it was a completed fabric, and a manufacture within the meaning of the act of congress, and so subject to a less duty than that exacted, and the plaintiff is entitled to recover. That is the simple question; and as you decide that you decide this case, and find for the plaintiff or the defendant.

If you find for the plaintiff and determine that this is a complete article of manufacture, you will assess the damages by allowing to the plaintiff what is agreed to have been the excess of duty charged by the collector. In the Indiana case, the amount is agreed to be

$1,959.47; in the Lord Clive, $933.72; and in the Lord Gough, $816.48.

But if you are of opinion that this is not a complete fabric made out of hoop iron, of course your verdict will be for the defendant. The case is with the jury.

The jury rendered a verdict for plaintiff for $3,970.20, the full amount claimed, with interest.

NOTE. The above charge is reported in full because the principles laid down are of considerable importance in the construction of the tariff laws. The particular question involved is one which has been the subject of controversy for many years. In 1868 the treasury department held that all cotton ties (except one known as Beard's Patent Lock Tie) were dutiable as hoop iron. Shortly afterwards the case of *Graham* v. *Collector*, (not reported,) involving the question of duty on cotton ties, was tried in the United States circuit court at New Orleans, and a decision rendered in favor of their classification as manufactures of iron. The treasury department thereupon changed its ruling, and admitted them as manufactures of iron. In 1880 the department again changed its ruling and refused to admit cotton ties as manufactures if the buckles were loose, but admitted them if the buckles were riveted on. In January, 1881, the case of *Ranlett* v. *Collector*, (not reported,) involving the question of duty on cotton ties with loose buckles, was tried in the United States circuit court at New Orleans, and resulted in favor of the importer. The treasury department, however, refused to modify the ruling. Afterwards an appeal was made by the home manufacturers to Secretary Sherman to extend the ruling of the department so as to include cotton ties with riveted buckles in the category of hoop iron. The secretary, however, in a published letter of January 26, 1881, refused the application. A similar application was made upon the accession of Secretary Windom, but he, in a published letter of May 9, 1881, adhered to the decision of his predecessor. An appeal has been taken by the government in the case of *Ranlett* v. *Collector*, *supra*, and it is understood that an appeal will be taken in the present case, so that the question will ultimately be settled by the highest tribunal.

In connection with this subject may be mentioned the case of *Leng* v. *Arthur*, (not reported,) tried in 1868, in the circuit court for the southern district of New York, wherein a verdict was rendered in favor of an importer who imported hoop iron cut to lengths and punched with holes, for barrel hoops, and who claimed that these were manufactures of iron. The department for some years followed this decision, but afterwards, in 1880, assessed all such cut hoops as hoop iron. See, also, the opinion of Atty. Gen. Devens, in Op. of Atty. Gen., vol.16, page 660.—[REP.